William L. Nicoletti v. Commissioner.
Nicoletti v. Commissioner
Docket No. 21945.
United States Tax Court
1951 Tax Ct. Memo LEXIS 74; 10 T.C.M. (CCH) 983; T.C.M. (RIA) 51300; October 10, 1951
*74 Partner or employee. - Upon the evidence, it is held that the petitioner was an employee of a partnership in the period from March through September, 1945; that he was not a partner therein; and that he reported all of the compensation that he received. Arthur Klein, Esq., 129 Church St., New Haven 7, Conn., for the petitioner. Joseph Landis, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in the petitioner's income tax for the calendar year 1945 in the amount of $7,403.24 and a 50 per cent penalty in the amount of $3,701.62. Assertion of the penalty was waived by counsel for the respondent at the hearing. The deficiency determined results from the respondent's finding that the petitioner understated his income from the Valley Poultry Company. Consequent on this finding the respondent disallowed a deduction for medical expenses which did not exceed the statutory percentage of adjusted gross income as determined in the notice of deficiency. Findings of Fact The petitioner is an individual who resides in Ansonia, Connecticut, and who filed his income tax return for the year 1945 with the *75 Collector of Internal Revenue at Hartford, Connecticut. Prior to 1945, the petitioner had been engaged in the retail poultry business, in partnership with his mother, at Ansonia, Connecticut. In the conduct of that business he purchased poultry from 15 or 20 farmers in Connecticut. He loaded the poultry in his truck and hauled it to his place of business where he retailed it. Four members of the Savelewitz family operated a poultry business in Ansonia in competition with the petitioner. The petitioner and the Savelewitz firm bought and sold poultry between themselves on occasions when one had a shortage and the other a surplus. Such sales were made at cost. In the latter part of 1944, the petitioner found it difficult to buy poultry at ceiling prices. In order to supply his needs, he found it necessary to buy at over ceiling prices, but he continued to sell such poultry at ceiling prices. In the early part of 1945, the over ceiling prices that the petitioner was required to pay were so high that the petitioner could no longer retail at ceiling prices. He and his mother then decided to, and did, close their place of business. After the petitioner's place of business had been *76 closed for about two weeks, the members of the Savelewitz firm suggested that he join them in the wholesale poultry business. The petitioner declined to do so for several reasons. The poultry would have to be purchased and sold at over ceiling prices and the petitioner did not want to engage in such transactions. Moreover, he did not want to risk any capital in the wholesale business about which he knew nothing. One of the members of the firm, Morris Savelewitz, then suggested to the petitioner that if he would introduce the Savelewitzes to the farmers that he knew, help them buy poultry, load and deliver it, and take care of the equipment, they would pay him 20 per cent of the profits of the venture. The petitioner accepted the offer, and from then through September, 1945, he introduced the Savelewitzes to farmers who had poultry to sell, loaded the poultry on a truck owned by the firm, and made deliveries to purchasers. The petitioner did not make any investment in the business of the Savelewitzes which was conducted as a partnership under the name of Valley Poultry Company. He did not purchase any poultry during the period that he was associated with the Valley Poultry Company. *77 During the period from March through September, 1945, the Valley Poultry Company purchased and sold poultry at over ceiling prices. The farmers from whom poultry was purchased knew of the existence of the black market in poultry and kept themselves informed as to the daily prices in New York. It was necessary for the Valley Poultry Company to pay over ceiling prices in order to obtain poultry. Valley Poultry Company sold the poultry purchased by it at an average price of three cents per pound over cost. The only book record kept by the Valley Poultry Company consisted of a book in which were recorded in Hebrew the names of the persons from whom poultry was purchased and those to whom it was sold, and also the O.P.A. prices of purchases and sales. The Valley Poultry Company paid to the petitioner every week or two the amount that it owed to him. For the year 1945, the Valley Poultry Company filed a partnership return in which it listed the petitioner and four persons whose surnames were Savelewitz as partners. The distributive share of each was shown on the return as being $2,827.26. That amount was reported by the petitioner in his income tax return for the year 1945 as received *78 from the Valley Poultry Company. The Valley Poultry Company discontinued business in the latter part of September, 1945. At that time, all profits had been distributed. The assets consisted of some crates and a truck. The petitioner received some of the crates and a portion of the price for which the truck was sold. The petitioner was an employee of the Valley Poultry Company in the period from March through September, 1945. The compensation received by the petitioner for services rendered in that period to the Valley Poultry Company was not in excess of the amount of $2,827.26. Opinion ARUNDELL, Judge: The respondent determined that the Valley Poultry Company understated its gross receipts and income by $90,227.37, and that the petitioner's share thereof, as a partner, was $18,045.47. The petitioner contends that he was not a partner, and he has established to our satisfaction that he was not. The evidence is that the petitioner was offered a participating interest by the Savelewitzes in the purchase and sale of poultry, but that he refused to join in that venture. He was then offered employment by the Savelewitz firm which he accepted. He made no investment in or contribution *79 to the capital of the firm. He did not advance any of funds that were used to purchase poultry. There was no written agreement to which the petitioner was a party. Both parties cite the case of . That case as well as the later one of , treats the question of the existence of a partnership as one of fact, to be determined in the light of the intention of the parties. The ultimate question is "whether the parties really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both." Upon examination of the evidence in this proceeding, particularly the testimony of the petitioner and the testimony as to his conduct in the operation of the business, we are convinced that the petitioner never intended to, and did not, become a partner in the Valley Poultry Company. While a partnership return was filed, the petitioner had nothing to do with its preparation and filing. We are satisfied that the petitioner's relation to the Valley Poultry Company was that of an employee and that he included *80 in his 1945 income tax return the full amount of the compensation that he received from that firm. A substantial part of the record in this proceeding is devoted to the question of whether the partnership correctly computed its income. In view of the conclusion that we have reached as to the petitioners' status, it is not necessary to decide that question. Decision will be entered for the petitioner.